Larry T. WILSON, Plaintiff-Appellee, Cross-Appellant,

v.

Thomas L. BEEBE, Defendant-Appellant, Cross-Appellee.

Nos. 82–1362, 82–1385.

United States Court of Appeals, Sixth Circuit.

Re-Argued Jan. 14, 1985.

Decided Aug. 12, 1985.

Frank J. Kelley, Atty. Gen. of Michigan, Louis J. Caruso, Sol. Gen., Thomas A. Kulick, Thomas L. Casey, (argued), Lansing, Mich., for defendant-appellant, cross-appellee.

David R. Skinner (argued), Bay City, Michigan, Richard B. Gustafson, Bay City, Mich., for plaintiff-appellee, cross-appellant.

John A. Obee (argued), Cooperating Counsel for ACLU Fund of Mich., Southfield, Mich., for amicus curiae.

Before LIVELY, Chief Judge, ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY, WELL-

FORD and MILBURN, Circuit Judges; and EDWARDS, Senior Circuit Judge.*

LIVELY, Chief Judge.

The principal question before the court is whether the rule of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), applies to actions brought pursuant to 42 U.S.C. § 1983 (1982) for damages resulting from the negligent deprivation of a liberty interest. The Supreme Court held in *Parratt* that there is no cause of action under § 1983 for the random, unauthorized acts of a state official which deprive a person of property if the state provides an adequate post-deprivation remedy. Since *Vicory v. Walton,* 721 F.2d 1062 (6th Cir. 1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984), this court has interpreted *Parratt* as applying only to § 1983 cases where the claimed deprivation is one of procedural due process. In *Brandon v. Allen,* 719 F.2d 151 (6th Cir.1983), *rev'd on other grounds sub nom. Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), we recognized a cause of action under § 1983 for the intentional deprivation of a liberty interest by one acting under color of state law. The officer who committed the intentional act in *Brandon* did not defend, and no issue was presented as to whether the inquiry of *Parratt v. Taylor* should be made to determine whether the state provided an adequate post-deprivation remedy. Now we consider a case where the negligent act of a state officer deprived a person of a liberty interest and the law of the state provided a remedy in damages.

## THE FACTS AND PRIOR PROCEEDINGS

### I.

### A.

The plaintiff, Larry Wilson, was grievously injured when the service revolver of the defendant, Thomas Beebe, a Michigan state police officer, discharged as Beebe was attempting to handcuff Wilson after placing him under arrest. Wilson sued Beebe and others, including the State of Michigan, in the district court, seeking damages under 42 U.S.C. § 1983 (1982) and under a pendent state claim of negligence. In an interlocutory appeal this court affirmed the district court's dismissal of counts pertaining to Beebe's supervisors on the grounds that the complaint did not allege that the supervisors had any personal role in the incident or that they failed in their supervisory or training duties. *Wilson v. Beebe,* 612 F.2d 275 (6th Cir.1980).

The case then returned to the district court where it was tried by agreement before a magistrate, with Beebe as the only defendant. The magistrate found that Beebe was negligent in attempting to handcuff Wilson while holding his cocked revolver and that this negligence was the proximate cause of Wilson's injuries. The magistrate also specifically found that "Beebe did not intend to fire the gun and does not know why the gun fired." Despite this finding of negligence and proximate cause, the magistrate concluded that Wilson's complaint did not state a claim upon which relief could be granted under § 1983 because of the rule enunciated in *Parratt v. Taylor.* However, the magistrate found that Wilson was entitled to recover under his pendent state negligence claim and recommended a judgment awarding damages for permanent injuries, past and future medical expenses, past and future pain and suffering, and loss of earning capacity.

Both parties filed objections and, after de novo review, the district court agreed with the magistrate that there was no cause of action under § 1983, but that Wilson was entitled to recover under his pendent state claim. The district court entered judgment in Wilson's favor for $2,569,638, and both parties appealed.

A panel of this court reversed the dismissal of the § 1983 claim, affirmed the finding that Beebe is liable for negligence under Michigan law and remanded for the

* Judge Edwards took senior status on January 15, 1985.

addition of statutory interest. *Wilson v. Beebe,* 743 F.2d 342 (6th Cir.1984). Judge Merritt dissented in part, stating that the complaint did not set forth a claim for negligence under state law and that the district court erred in not considering any defense of qualified immunity Beebe might have under § 1983, an issue which the district court did not reach because it found no cause of action under the federal statute. *Id.* at 351. A majority of the judges in active service voted to rehear the case *en banc,* thus vacating the panel opinion and the previous judgment of the court. Rule 14, Rules of the Sixth Circuit. Following supplemental briefing the case was argued before the full court.

### B.

The facts surrounding Wilson's injuries are set forth in some detail in the panel opinion. Briefly, while investigating a breaking and entering report Beebe encountered Wilson walking along a dark rural road. Beebe knew from a radio report that guns and ammunition had been taken during the burglary. Beebe was alone in his patrol car when he spotted Wilson who fit the description of the suspect. Beebe made several attempts to summon other officers, but was unsuccessful. Beebe ordered Wilson to walk to the patrol car where he conducted a frisk and found no weapons. While holding his cocked revolver in one hand, Beebe was attempting to handcuff Wilson when his revolver discharged. The magistrate found that all four of Beebe's fingers were wrapped around the handle of the pistol, with his thumb overlapping the fingers; his index finger was not in the trigger area. While he found that Beebe did not intend to fire the gun the magistrate also found that Beebe acted contrary to his training as a Michigan State Police Department Officer in cocking his revolver during the arrest and handcuffing of Wilson and that this conduct was negligent.

### THE DUE PROCESS CLAIM

### II.

In *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court found that Congress had three principal aims in enacting the 1871 civil rights act which is now 42 U.S.C. § 1983: (1) to override "invidious legislation" by the states which impaired rights and privileges of citizens of the United States; (2) to provide a remedy for infringement of such rights and privileges where state law was inadequate; and (3) to provide a federal remedy where a state remedy was adequate in theory but not in actual practice. *Id.* at 173–74, 81 S.Ct. at 476–77.

> It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.

*Id.* at 180, 81 S.Ct. at 480.

*Monroe v. Pape* involved a claim for damages for a Fourth Amendment violation, a warrantless search conducted with callous disregard for the rights of the occupants of the place searched. The defendants argued that the plaintiffs had no cause of action under § 1983 because the state officers did not act in accordance with state law. On the contrary, since Illinois by its constitution and laws made unreasonable searches and seizures illegal, the offending officers acted in contravention of state law. This being the case, the defendants argued that they had not acted "under color of state law," since an officer acts under color of state law only when he acts in accordance with a state law, not when he acts in violation of such law. Thus, the defendants contended, they should have been sued in state court for violation of state laws, not in federal court under § 1983.

It was in response to this argument that Justice Douglas wrote for the Court:

> It is no answer that the State has a law which if enforced would give relief. The

federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws unreasonable searches and seizures is no barrier to the present suit in the federal court.

*Id.* at 183, 81 S.Ct. at 482. This statement disposed of any argument that exhaustion of state remedies is required, as in habeas corpus, before a claim may be made under § 1983. It appears also to hold that when a person acting under color of state law violates rights embodied in a substantive guarantee of the Constitution, such as the Fourth Amendment guarantee against unreasonable searches and seizures, it makes no difference that the state affords a remedy; the victim may choose to pursue his federal remedy under § 1983 without resorting to the courts of the state.

Justice Douglas also wrote in *Monroe v. Pape* that "[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* at 187, 81 S.Ct. at 484. However, in *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979), the Court held that § 1983 does not impose liability for violations of duties which arise out of tort law. The remedy for such violations lies in state courts where traditional principles of tort law are applied. Section 1983 is implicated only when the acts of a defendant under color of state law violate rights protected by the Constitution or laws of the United States. *Baker v. McCollan* involved detention of the plaintiff for several days after his arrest pursuant to a valid warrant. Though the plaintiff was deprived of liberty, the Court found that the deprivation was not without due process of law since the warrant satisfied the requirements of the Fourth and Fourteenth Amendments.

In *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), the Supreme Court found that police conduct "that shocks the conscience" violates the due process clause of the Fourteenth Amendment. In *Rochin* the Court reversed a criminal conviction for such a due process violation. In *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), the court applied the *Rochin* standard to a § 1983 case.

The solution lies in the proposition that, both before and after sentence, constitutional protection against police brutality is not limited to conduct violating the specific command of the Eighth Amendment or, as in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), of the Fourth. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), must stand for the proposition that, quite apart from any "specific" of the Bill of Rights, application of undue force by law enforcement officers deprives a suspect of liberty without due process of law. If Rochin suffered such a violation of his constitutional rights by the police as to be entitled to invalidation of a conviction obtained as a consequence, he also was the victim of a violation sufficient to sustain an action under the Civil Rights Act.

(Footnote deleted).

In *Johnson v. Glick*, Judge Friendly also listed several factors which distinguish official conduct toward a prisoner or arrestee which reaches constitutional dimensions from that which merely constitutes a tort:

In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

481 F.2d at 1033. These factors have been considered by several other courts. *E.g., Bates v. Jean*, 745 F.2d 1146, 1152 (7th Cir.1984); *Norris v. District of Columbia*, 737 F.2d 1148, 1150 (D.C.Cir.1984); *United States v. Calhoun*, 726 F.2d 162, 163 (4th

Cir.1984); *Smith v. Iron County,* 692 F.2d 685, 687 (10th Cir.1982); *Meredith v. State of Arizona,* 523 F.2d 481, 483 (9th Cir. 1975).

The decisions referred to herein, and others, have developed the rule that due process claims for injuries inflicted under color of state law may proceed either upon the theory that a deprivation has occurred without procedural due process or that there has been a substantive due process violation; that is, either the official conduct shocks the conscience, as in *Rochin,* or infringes a specific constitutional guarantee, as in *Monroe v. Pape.*

## III.

In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court established a limitation of the availability of § 1983 in procedural due process cases. Where the only violation complained of is a Fourteenth Amendment claim of deprivation of property without due process of law, the federal court must determine whether the state provides remedies for the tort which satisfy the requirements of procedural due process. *Id.* at 537, 101 S.Ct. at 1914. If the state does provide a remedy which meets this standard, then the deprivation, though under color of state law, is not without due process of law. The state remedy need not be as complete as that which would have been provided by § 1983. "Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983 that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Id.* at 544, 101 S.Ct. at 1917.

In *Parratt v. Taylor,* the plaintiff was deprived of personal property by the negligent "random and unauthorized" acts of prison employees and not by actions taken pursuant to some established state procedure. *Id.* at 541, 101 S.Ct. at 1916. This being the case, there was no opportunity for a predeprivation hearing and the availability of a meaningful postdeprivation

hearing satisfied the requirement of procedural due process.

The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive how the State could provide a meaningful hearing before the deprivation takes place.

*Id.*

In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982), the Supreme Court emphasized that *Parratt v. Taylor* applies only to unauthorized acts by persons acting under color of state law and does not apply to a case where a plaintiff is deprived of property under an "established state procedure" without adequate predeprivation procedural safeguards. This is a logical limitation on *Parratt v. Taylor* because, where the action is taken pursuant to such established procedures, there is an opportunity to provide procedural process before the act occurs. Applying this reasoning, the reach of *Parratt v. Taylor* was extended to intentional deprivations of property in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984):

We can discern no logical distinction between negligent and intentional deprivations of property insofar as the "practicability" of affording predeprivation process is concerned. The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct.

\* \* \* \* \* \*

Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Four-

teenth Amendment if a meaningful post-deprivation remedy for the loss is available.

## IV.

### A.

■ *Parratt v. Taylor, Logan v. Zimmerman Brush Co.*, and *Hudson v. Palmer* all dealt with deprivations of property. In *Parratt v. Taylor*, 451 U.S. at 545, 101 S.Ct. at 1917, Justice Blackmun was joined by Justice White in a concurring opinion where he wrote:

I do not read the Court's opinion as applicable to a case concerning deprivation of life or of liberty.

The panel which first considered this case noted a division among the courts of appeals on whether the rule of *Parratt v. Taylor* applies to deprivations of liberty interests and agreed with Justice Blackmun that it does not. *Wilson v. Beebe*, 743 F.2d at 349–50 (majority opinion); 743 F.2d at 351 (opinion of Judge Merritt).

When the underlying rationale of *Parratt v. Taylor* is considered, the conclusion that its holding applies only to the deprivation of property lacks foundation. If a wrongdoer acts "on his own," either in the absence of an established state procedure or contrary to such a procedure, the state has no way to anticipate his conduct and no opportunity to afford the victim a hearing prior to the event. The first question in assessing the applicability of *Parratt v. Taylor* to a procedural due process claim does not concern the nature of the deprivation—whether it deprives the victim of life, liberty or property—but is whether the state had an opportunity to anticipate and control the conduct of the wrongdoer. This depends on whether the tortfeasor has acted randomly and without authorization or pursuant to established procedures. If the act is found to be random and unauthorized, the second question in assessing the applicability of *Parratt v. Taylor* is whether there is an adequate postdeprivation proceeding which satisfies the requirements of procedural due process. Though *Parratt v. Taylor* concerned the loss of property, we see nothing in its underlying rationale which would require a different treatment of due process claims for deprivation of liberty.

### B.

■ Having determined that *Parratt v. Taylor* applies to cases involving deprivations of liberty interests as well as of property, we conclude that the procedural due process claim in the present case may not be maintained under § 1983 because the Michigan postdeprivation remedy is adequate. The district court found that Beebe acted contrary to his training in the use and handling of guns when he utilized a cocked pistol in effecting the arrest and attempting to handcuff Wilson. Rather than following established state procedures, Beebe acted contrary to them. There was no showing that Beebe's superiors had any reason to anticipate his "random and unauthorized act," and thus they had no way to predict the occurrence or to take steps to prevent it. Thus, the first test of *Parratt v. Taylor* is satisfied.

The second test is whether the State of Michigan provided an adequate postdeprivation remedy. The record in this case answers the question. Applying the substantive law of Michigan to Wilson's pendent claim for negligence, the district court awarded Wilson substantial damages. The prayer of the complaint was the same under all counts. Wilson sought compensatory damages, punitive damages and other relief "that shall be agreeable to equity and good conscience and as may appear proper." Though the state remedy did not permit Wilson to recover attorney fees, which would have been available if § 1983 had been the basis of his recovery of damages, this did not render that remedy inadequate. *Parratt v. Taylor* makes clear that the state remedy need not provide all the relief which would have been available if the plaintiff had been permitted to proceed under § 1983. 451 U.S. at 544, 101 S.Ct. at 1917.

The district court did not err in applying *Parratt v. Taylor* to the § 1983 claim of deprivation of procedural due process. None of the three purposes of § 1983 as set forth in *Monroe v. Pape* was implicated in Wilson's procedural due process claim. Michigan has no "invidious legislation" related to the claim and the tort remedy provided by Michigan is adequate, both in practice and in theory.

This does not end our due process inquiry, however. We must also determine whether Wilson was entitled to prevail under § 1983 on a substantive due process claim.

## V.

### A.

■ Though Wilson may not recover twice for the same injuries resulting from a single negligent act, if he pleaded and proved a substantive due process claim he is entitled to recover reasonable attorney fees pursuant to 42 U.S.C. § 1988 (1982).

In *Parratt v. Taylor* the court stated that the plaintiff referred to "no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter*." 451 U.S. at 536, 101 S.Ct. at 1913 (italics in original). The Court contrasted Taylor's claim with those of the plaintiffs in *Monroe v. Pape* and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which involved alleged violations of the Fourth and Eighth Amendments. Justice Stevens made the same point in his separate concurring and dissenting opinion in *Hudson v. Palmer.* Agreeing that *Parratt v. Taylor* required dismissal of the § 1983 action, Justice Stevens added in footnote 4, "I do not understand the Court's holding to apply to conduct that violates a substantive constitutional right—actions governmental officials may not take no matter what procedural protections accompany them." 104 S.Ct. at 3208. Justice Brennan, Justice Marshall and Justice Blackmun joined this opinion.

### B.

Wilson set out his civil rights claim in Count I of the complaint. The complaint did not challenge the legality of the arrest. The § 1983 claim is contained in three consecutive paragraphs of Count I:

38. That Plaintiff had a due process right under the Constitution of the United States to be free from bodily harm and injury.

39. That Plaintiff had a right under the Constitution of the United States to be free from cruel and unusual punishment.

40. That Defendant Thomas L. Beebe then and there owed a duty to this Plaintiff and all others under arrest, apprehension or in custody, to:

a. Keep this Plaintiff safe and secure after arrest, apprehension or when in custody.

b. Treat Plaintiff with kindness and humanity as may be consistant with security.

c. Exercise the highest degree of care and use a firearm in such a manner so as to avoid causing unreasonable harm to others.

d. Exercise only reasonable precautions and reasonable force necessary, in performing this important duty to society, in the apprehension and confinement of arrestees.

e. Not deprive Plaintiff of any rights, privileges or immunities secured by the Constitution and laws of the United States without due process of law.

f. Not inflict cruel and unusual punishment.

g. Not use force which is likely to cause death or great bodily harm unless it is reasonably believed to be necessary to prevent imminent death or great bodily harm.

In a preliminary ruling the district court dismissed the Eighth Amendment claim of cruel and unusual punishment on the authority of *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), leaving only the Fourteenth Amendment

due process claim for trial. Wilson did not appeal that ruling.

In *Tennessee v. Garner*, — U.S. —, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985), the Supreme Court wrote, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." If there is an unreasonable seizure, it violates the Fourth Amendment which is made applicable to the states by the due process clause of the Fourteenth Amendment. As such, it is a substantive due process violation. It is clear, however, that Wilson did not base his due process claim on the reasonableness of his arrest. The seizure was complete when Wilson submitted to arrest, and his complaint only charged a violation of his due process rights after the arrest occurred. The complaint spoke of the duty owed those "under arrest, apprehension or in custody." This case was not pleaded or tried as one for the violation of the Fourth Amendment right to be free of unreasonable seizures or any other substantive right specified in the Constitution.

## C.

■ There remains the duty to inquire whether Wilson proved a case which fits the other prong of substantive due process—official acts which "may not take place no matter what procedural protections accompany them." *Hudson v. Palmer*, 104 S.Ct. at 3208, n. 4. (Separate opinion of Stevens, J.). This description is a refinement of Justice Frankfurter's "shocks the conscience" test in *Rochin v. California*. Neither formulation requires a claim that some specific guarantee of the Constitution apart from the due process clause be violated. Thus, both *Rochin* and the opinion of four Justices in *Hudson v. Palmer* support Judge Friendly's assertion in *Johnson v. Glick* that there is a species of substantive due process, apart from any "specific" of the Bill of Rights which is violated when law enforcement officers apply undue force in dealing with suspects. This is a substantive due process right akin to the "fundamental fairness" concept of procedural due process.

In *Johnson v. Glick*, a corrections officer struck and threatened to kill a pretrial detainee. There was no question but that the officer intentionally assaulted the prisoner. Likewise in *Rochin v. California* there was also no issue of the intention of the officers. The suspect put some capsules in his mouth during the arrest. The officers then took the suspect to a hospital and forced him against his will to take an emetic into his stomach which caused the suspect to vomit the capsules which were found to contain narcotics. This occurred after the arrest or seizure was complete. The Court found this conduct to shock the conscience and to "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Rochin*, 342 U.S. at 169, 72 S.Ct. at 208 quoting *Malinski v. New York*, 324 U.S. 401, 416–17, 65 S.Ct. 781, 788–89, 89 L.Ed. 1029 (1945).

We know of no case in which negligent conduct has been held to constitute a substantive due process violation of the type described in *Rochin v. California* and *Johnson v. Glick*, and conclude that a substantive due process violation of this kind does require an intentional act. The factors listed in *Johnson v. Glick* all relate to the purposeful infliction of injury. The finding of the magistrate in the present case that Wilson's injuries resulted from Beebe's negligence and that he did not intend to fire the gun is supported by the record and is not clearly erroneous. Therefore, we conclude that Wilson did not plead or prove a case for recovery under § 1983 for a substantive due process violation based on official conduct which shocks the conscience.

The district court correctly held that Wilson failed to establish a cause of action under § 1983. He pled and relied upon due process "*simpliciter,*" but the proof did not bring his claim within any of the circumstances where damages may be recov-

ered for either a procedural or a substantive due process violation.

## OTHER ISSUES

### VI.

Though the principal issue in this case relates to the right of recovery under § 1983, the parties have presented other questions. These relate to the judgment on the pendent state claim.

### A.

In the original complaint Wilson named the State of Michigan and the Michigan State Police as defendants. Though these defendants were dismissed before trial, the State of Michigan agreed to represent and indemnify Beebe pursuant to a Michigan statute which gives governmental agencies this option when the claim is one "for personal injuries or property damage caused by the officer or employee while in the course of employment and while acting within the scope of his or her authority...." Michigan Compiled Laws Annotated (M.C.L.A.) 691.1408(1). The statute also provides that "[t]his section shall not impose any liability on a governmental agency." M.C.L.A. § 691.1408(3).

■ Beebe argues that since the State has indemnified him and any judgment will be paid from state funds, this action is barred by the Eleventh Amendment to the United States Constitution, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State....

U.S. Const. amend. XI. Though the amendment refers only to suits against a state by citizens of another state, it has long been held to bar federal court actions against a state by its own citizens as well. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In the present case Wilson dropped his claim against the State of Michigan and the Michigan State Police and proceeded only against Beebe. This fact does not foreclose application of

the Eleventh Amendment, however, because applicability "is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceedings, as it appears from the entire record." *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974), quoting *Ex parte New York,* 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921). The Supreme Court stated the test somewhat differently in *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit" as provided by the Eleventh Amendment. Beebe argues that it is evident the State is the real party in interest even though he is the only defendant.

■ With the dismissal of the two "state" defendants this action was not one brought directly against the State. The only question is whether it was an indirect action against the state for money damages, which would be subject to the Eleventh Amendment prohibition. Where an action names only individual defendants, but in effect is an effort to get around the Eleventh Amendment and collect from a state for the authorized actions of its agents and employees, the Eleventh Amendment applies. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, the Eleventh Amendment does not bar an action against a state official or employee individually for his tortious conduct. *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 50–51, 64 S.Ct. 873, 874–75, 88 L.Ed. 1121 (1944); *Hopkins v. Clemson College,* 221 U.S. 636, 642–43, 31 S.Ct. 654, 656, 55 L.Ed. 890 (1911).

■ In *Scheuer v. Rhodes* the Supreme Court reiterated the *Great Northern* and *Hopkins* rule that "damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that the hold public office." 416 U.S.

at 238, 94 S.Ct. at 1687. A claim for damages against individual defendants seeking to impose individual liability for action taken under color of state law is not prohibited. Only if the purpose of the lawsuit is to coerce state action by the official sued and to impose a liability which *"must* be paid from public funds" does the Eleventh Amendment apply. *Edelman v. Jordan,* 415 U.S. at 663, 94 S.Ct. at 1355 (emphasis added). Here, unlike the defendant in *Edelman v. Jordan* and *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), Beebe held no state office which gave him control over state funds. Thus, a suit against him would not have the effect of forcing the State to expend public funds. Also, the liability which Wilson sought to impose was not one which *must* be paid from the State treasury. It will be paid by the State because the State has exercised its option under M.C.L.A. § 691.1408(1) and elected to indemnify Beebe. This obligation is not imposed on the State; it is an obligation voluntarily imposed. There would be no question of who would be liable for a judgment in this case except for the State's voluntary decision to indemnify Beebe; only Beebe would be liable. The State cannot create an Eleventh Amendment bar by its voluntary act when the plaintiff has proceeded only against the individual wrongdoer in his individual capacity. This was made clear in *Spruytte v. Walters,* 753 F.2d 498, 512 n. 6 (6th Cir. 1985), *petition for cert. filed,* 53 U.S.L.W. 3839 (U.S. May 28, 1985) (No. 84–1800), where Judge Martin wrote for this court:

> A government may not manufacture immunity for its employees by agreeing to indemnify them. *Demery v. Kupperman,* 735 F.2d 1139, 1146–47 (9th Cir. 1984); *Foster v. Day & Zimmerman, Inc.,* 502 F.2d 867, 875 (8th Cir.1974); L. Tribe, American Constitutional Law 133 n. 22 (1978).

This is exactly the result which would flow from finding the present action barred by the Eleventh Amendment. Beebe is not entitled to the protection of the Eleventh Amendment, which embodies a grant of immunity to the states in recognition of the requirements of federalism, and the State cannot clothe him with this immunity by voluntarily agreeing to pay any judgment rendered against him.

Beebe also contends that *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), requires Wilson to seek relief in state rather than federal court. A similar argument was made and rejected in *Spruytte v. Walters.* There the court reviewed the Supreme Court decisions from *Ex parte Young* to *Pennhurst State School & Hospital v. Halderman* on indirect attempts to recover damages from states and concluded that the Court had never held that federal court suits against state officials in their individual capacities are prohibited by the Eleventh Amendment. 753 F.2d at 512–14.

The district court correctly rejected Beebe's Eleventh Amendment defense and proceeded with the trial of Wilson's action.

## B.

Beebe contends he was entitled to immunity from tort liability under Michigan's governmental immunity statute, M.C.L.A. § 691.1407, which provides:

> **691.1407. Governmental immunity from tort liability, continuance**
>
> Sec. 7. Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed.

The district court held that Beebe was engaged in a "ministerial" act in attempting to handcuff Wilson and that immunity does not attach to such acts. The court noted that Michigan had traditionally observed a "ministerial—discretionary" distinction with respect to governmental immunity, citing *Wall v. Trumbull,* 16 Mich. 228 (1867).

At the time of trial there were several decisions of the Michigan Court of Appeals which cast doubt on the continued viability of the "ministerial-discretionary" test. However, any questions about the propriety of analyzing claims of immunity by use of this test were answered by the Supreme Court of Michigan in *Ross v. Consumers Power Co. (On Reh)*, 420 Mich. 567, 363 N.W.2d 641 (1984). While departing from the traditional "ministerial-discretionary" test the court created a two-tiered approach to claims of governmental immunity. Under this approach judges, legislators and the highest executive officers of all levels of government are absolutely immune from all tort liability when acting within their official authority. Lower level officials and other employees and agents are immune from tort liability only when they satisfy three requirements. They must be:

> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
>
> 2) acting in good faith; and
>
> 3) preforming discretionary, as opposed to ministerial acts.
>
> Under this test, no individual immunity exists for *ultra vires* activities.

*Id.* at 633–35, 363 N.W.2d 641 (footnote omitted).

 It cannot be questioned that a police officer is among the "lower level officials, employees and agents" described in *Ross*. Thus the "ministerial-discretionary" test is properly applied to Beebe's acts. In applying this test, it is the specific conduct complained of—in this case, attempting to handcuff a prisoner while holding a cocked pistol—which must be examined. Beebe had already exercised his discretion in determining the course of action to follow—that is, whether to attempt to arrest Wilson and immobilize him by himself or to attempt to keep Wilson under surveillance and limit his movements until help could be summoned. The decision to attempt to handcuff Wilson while holding a cocked weapon merely related to the manner in which the basic decision once made would be carried out. *Ross* makes a distinction between the officer's decision as to "the type of action" to be taken and decisions concerning the manner of executing the plan once decided upon. *Id.* at 659–60, 363 N.W.2d 641.

Both in his complaint and in oral argument before this court Wilson's counsel based the claim for tort recovery on the specific act of negligently attempting to handcuff Wilson while holding a cocked weapon. At no point did Wilson base his claim on Beebe's first decision, the one concerning the type of action to be taken. Our reading of *Ross* and *Sherbutte v. Marine City*, 374 Mich. 48, 130 N.W.2d 920 (1964), discussed by the court in *Ross*, leads us to conclude that the specific act complained of by Wilson was ministerial and not subject to an immunity defense.

### C.

 Beebe also asserts that the pleadings did not contain a pendent state law claim of negligence and that even if there was such a claim, the evidence was insufficient to support a finding that he acted negligently. We find that Count I sufficiently pled common law negligence. Some confusion arose because the magistrate stated that the negligence claim was contained in "Count II," which was dismissed before trial. The district court treated the reference to Count II as an "oversight." The conclusion that the plaintiff sought recovery under a pendent state claim for negligence is fully supported by the record. Whatever the explanation for the magistrate's reference to Count II, it is clear that Count I charged common law negligence and that the parties proceeded throughout the trial on the assumption that such a claim was before the court. At the very least this issue was "tried by express or implied consent of the parties," and must "be treated in all respects as if [it] had been raised in the pleadings." Rule 15(b), Fed.R.Civ.P.

 We stated earlier in this opinion that the magistrate's finding of negligence

was not clearly erroneous. Beebe argues that the finding was based solely on evidence which should have been excluded. Immediately after the shooting, Beebe's supervisor, Captain MacGregor, prepared a report for his supervisor, Colonel Halverson. In the report MacGregor stated that Beebe "admittedly cocked his weapon, contrary to all training in weapons use and handling that he has had as a member of this department." At trial, the defendant objected to admission of the "MacGregor Memorandum" on the ground that it was inadmissible under Federal Rule of Evidence 407 as evidence of subsequent remedial measures and under Rule 403 because its prejudicial impact would far outweigh any probative value it might have since MacGregor was dead and there would be no chance to cross-examine him or rebut his conclusion.

We agree with the panel, which held that the report was properly admitted as a public record under Federal Rule of Evidence 803(8)(A) or 803(8)(C). *Wilson v. Beebe*, 743 F.2d at 346–47. The report was an official inter-office communication required by a standing departmental order and it met all of the requirements for admissibility set forth in the Advisory Committee Notes for Rule 803. See *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979). Beebe's Rule 407 argument has no merit. The report did not recommend a change in procedures following the shooting; it was a report of that incident and nothing more. Finally, the standard of review when the admissibility of evidence is challenged under Rule 403 is abuse of discretion. Beebe testified concerning his training and produced four witnesses who testified that his conduct was not contrary to his training. This minimized any prejudice resulting from his inability to cross-examine Captain MacGregor. The magistrate did not abuse his discretion in admitting the report.

### D.

One matter was argued in the original appeal and cross-appeal, but not addressed by the panel. The magistrate reduced the damages for future pain and suffering and for lost earning capacity to their present value by applying a rate of six percent. The district court determined that the proper rate of reduction was five percent, and applied that factor. Beebe argues that the proper rate is twelve percent, the current statutory interest rate on judgments, relying on a decision of the Michigan Court of Appeals, *Bruno v. Detroit Institute of Technology*, 51 Mich.App. 593, 600 n. 1, 215 N.W.2d 745 (1974). Wilson responds that the Michigan Court of Appeals upheld the five percent reduction rate after the statutory rate had been raised from five to six percent. See *Tiffany v. The Christman Co.*, 93 Mich.App. 267, 287–88, 287 N.W.2d 199 (1979). Other panels of the Michigan Court of Appeals have approved the five percent rate of reduction since the statutory rate was increased from six to twelve percent. See *Goins v. Ford Motor Co.*, 131 Mich.App. 185, 199–01, 347 N.W.2d 184 (1983); *Kovacs v. Chesapeake & Ohio Ry. Co.*, 134 Mich.App. 514, 532–33, 351 N.W.2d 581 (1984).

■ Since the treatment of this issue by the Michigan courts is unsettled and there is support for the decision of the district court, we will not disturb that decision. When we are required to apply state law and that law is unsettled, it is this court's practice to accept the "considered view" of a district judge who has reached a "permissible conclusion." *Louisville & Jefferson County Metropolitan Sewer District v. Travelers Insurance Co.*, 753 F.2d 533, 540 (6th Cir.1985); *Rudd-Melikian, Inc. v. Merritt*, 282 F.2d 924, 929 (6th Cir.1960).

■ It is clear from District Judge James Harvey's memorandum opinion that he gave careful consideration to the proper rate of reduction to be applied to future damages and he certainly reached a "permissible conclusion" in view of the various decisions of the Michigan Court of Appeals.

### E.

The panel decision directed that the judgment of the district court be amended on remand to provide for interest in accordance with M.C.L.A. § 600.6013. The petition for rehearing did not address this issue and neither party has raised it in briefs or oral arguments before the *en banc* court. On remand the district court will correct the judgment to provide for interest as set forth in the panel decision. See *Wilson v. Beebe*, 743 F.2d at 348.

The judgment of the district court is affirmed on appeal and cross-appeal and the case is remanded to the district court for the required amendment to the judgment. Each party will bear his costs on appeal.

KEITH, Circuit Judge, concurring in part and dissenting in part, joined by JONES, Circuit Judge, and EDWARDS, Senior Circuit Judge.

I concur in section VI of the majority's opinion. I cannot, however, concur in the portion of the opinion pertaining to Section 1983. For the reasons set forth below, I respectfully dissent from sections IV and V.

Today a majority of our Court decides that an unarmed nonresisting suspect cannot proceed under 42 U.S.C. § 1983 against a Michigan State Trooper who grievously injured him by recklessly attempting to handcuff him while holding a loaded and cocked .38 calibre service revolver pointed in his back. Since I do not share the majority's view on the newly pronounced limits upon a Section 1983 cause of action, I write briefly to dissent from sections IV and V of the majority's opinion.

In addressing Mr. Wilson's Section 1983 claim, the majority separates out for analysis what it views as the procedural and the substantive due process aspects of the claim. With respect to its procedural due process analysis, the majority focuses upon the question of whether the rule of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) applies to a negligent deprivation of a liberty interest. By considering the "underlying rationale of *Parratt v. Taylor*," the majority reasons that since the state did not have an opportunity to anticipate and control the conduct of the wrongdoer, and since the State of Michigan provides a postdeprivation remedy which is adequate, Mr. Wilson, therefore, cannot maintain a suit founded upon Section 1983.

With respect to its substantive due process analysis, the majority recognizes that there is a species of substantive due process apart from any specific of the Bill of Rights which is violated when law enforcement officers apply undue force in dealing with suspects. However, by restricting its view to the specific factual situation presented in two cases where such a species of substantive due process violations were found, the majority determines that a substantive due process violation of this kind requires an intentional act. The majority thus concludes that Mr. Wilson failed to establish a cause of action under Section 1983 for the violation of either a procedural or substantive due process right.

I sincerely believe the majority's analysis of this case to be flawed in two fundamental respects. First, with respect to the majority's due process analysis and reliance upon *Parratt v. Taylor*, I submit that this is simply not a procedural due process case. While the Supreme Court has recently extended *Parratt* to also apply to intentional deprivations of property, *Hudson v. Palmer*, — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), I do not believe a majority of the Supreme Court would apply *Parratt* to the egregious conduct present in the instant case. *See* 104 S.Ct. at 3208 n. 4 (Stevens, J., concurring in part, joined by Brennan, Marshall, Blackmun, JJ.) ("I do not understand the Court's holding to apply to conduct that violates a substantive constitutional right—actions governmental officials may not take no matter what procedural protections accompany them...."); *Parratt v. Taylor*, 451 U.S. at 545, 101 S.Ct. at 1917 (Blackmun, J., concurring, supported by White, J.) ("I do not read the Court's opinion as applicable to a case concerning deprivation of life or

of liberty. [citation omitted]. I also do not understand the Court to intimate that the sole content of the Due Process Clause is procedural regularity. I continue to believe that there are certain governmental actions that, even if undertaken with a fall panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process."); *cf. Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (upholding an award of punitive damages under Section 1983 for a guard's reckless or callous disregard for an inmate's rights).

In a recent Fifth Circuit case, Judge John Minor Wisdom noted:

> *Parratt* concerns alleged violations of procedural due process: whether a state has provided procedures that adequately protect individuals from arbitrary or erroneous deprivations of life, liberty, or property. An allegation that a state action has violated an individual's right to procedural due process is thus a condemnation of the procedures that attended the action and not an assessment of the constitutionality of the action itself. [citation omitted]. In such a case "[t]he controlling inquiry is solely whether the State is in a position to provide for predeprivation process." *Hudson,* — U.S. at ——, 104 S.Ct. at 3203–04. The State does not violate procedural due process by failing to provide a procedure it cannot practically provide. In contrast, when a plaintiff alleges that state action has violated an independent substantive right, he asserts that the action itself is unconstitutional. If so, his rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action. The availability of notice and a hearing is therefore irrelevant; *Parratt's* concern with the feasibility of predeprivation process has no place in this context.

*Augustine v. Doe,* 740 F.2d 322, 326–27 (5th Cir.1984) (footnote omitted).

In short, I believe the conduct of the state trooper in cocking his service revolver, placing it in the suspect's back and then failing to uncock the gun or remove it from the suspect's back while attempting to handcuff him, is the type of reckless governmental conduct which violates a substantive right of the suspect. Further, this type of egregious conduct not only is violative of Mr. Wilson's right, but also is antithetical to fundamental notions of due process, irrespective of the procedural protection provided by a state law tort remedy. As Judge Wisdom noted: *"Parratt v. Taylor* is not a magic wand that can make any section 1983 action resembling a tort suit disappear into thin air." *Augustine v. Doe,* 740 F.2d at 329. Thus, I dissent from section IV of the majority's opinion.

Second, with respect to the majority's substantive due process analysis, while I agree with their identification of the substantive right at issue in this case, I submit the majority errs in attempting to engraft a state of mind requirement onto this Section 1983 action. As the majority accurately points out, in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), Judge Henry Friendly applied the *Rochin v. California* standard to a Section 1983 action. In *Johnson,* Judge Friendly noted that: *"Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), must stand for the proposition that, quite apart from any 'specific' of the Bill of Rights, application of undue force by law enforcement officers deprives a suspect of liberty without due process of law." 481 F.2d at 1032. But even though the majority accurately identifies the substantive constitutional right violated, the majority concludes that a substantive due process violation of the kind found in *Rochin* and *Johnson v. Glick* "require[s] an intentional act." I cannot agree.

In 1961, in *Monroe v. Pape,* 365 U.S. 167, 81 S,Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court held that a Section 1983 claim contained no state of mind requirement. 365 U.S. at 187, 81 S.Ct. at 484 ("We do not think that gloss should be placed on § [1983].... Section [1983] should be read against the background of tort liability that

makes a man responsible for the natural consequences of his actions."). Two decades later, in *Parratt v. Taylor*, the Supreme Court reaffirmed this holding. 451 U.S. at 534, 101 S.Ct. at 1912 ("Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights.") ("Section 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has never been found by this Court to contain a state-of-mind requirement."). Given these unequivocal holdings by the Supreme Court that the genus of Section 1983 actions does not contain a state of mind requirement, I find absolutely no justification for the majority's novel pronouncement that a particular species of section 1983 actions now somehow requires an intentional act.[1] Thus, I dissent from section V of the majority's opinion.

In closing I would like to offer a few comments about Section 1983 actions. For some time now concerns have been expressed throughout the federal courts about Section 1983 actions transforming the fourteenth amendment into "a font of tort law to be superimposed upon whatever system may already be administered by the States" or the frivolous case "trivializing the right of action provided in § 1983." *E.g., Parratt v. Taylor*, 451 U.S. at 544, 101 S.Ct. at 1917 (quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)); 451 U.S. at 549, 101 S.Ct. at 1920 (Powell, J., concurring). Notwithstanding these sincere concerns, it strikes me that it has long been settled that "Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe*

*v. Pape*, 365 U.S. at 171–72, 81 S.Ct. at 475–76. I believe that by focusing on the connection between the use or abuse of state authority and the resultant deprivation of a litigant's rights, the federal courts will readily be able to distinguish between the situation in which the state actor's authority is merely incidental to the injury and the situation in which the injury is only caused by virtue of the state actor's authority.

With respect to frivolous Section 1983 cases, Justice Stevens stated in another context:

> Frivolous cases should be treated as exactly that, and not as occasions for fundamental shifts in legal doctrine. Our legal system has developed procedures for speedily disposing of unfounded claims; if they are inadequate to protect petitioners from vexatious litigation, then there is something wrong with those procedures, not with the law....

*Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 2012, 80 L.Ed.2d 590 (1984) (Stevens, J., dissenting) (footnote omitted). I agree with Justice Stevens' comments and find them fully applicable to the assault on Section 1983 actions.

Accordingly, I respectfully dissent from section IV and V of the majority's opinion.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's holding that Wilson failed to establish a cause of action under § 1983 for either a procedural or a substantive due process violation of his constitutionally-protected enjoyment of liberty. The majority holds that *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), establish-

---

1. Although Justice Frankfurter dissented from the Court's decision in *Monroe v. Pape*, he seemed to agree that a Section 1983 action did not contain a specific state of mind requirement. See 365 U.S. at 206, 81 S.Ct. at 494. At one point in his *Monroe* dissent, Justice Frankfurter noted:

 If the courts are to enforce § [1983], it is an unhappy form of judicial disapproval to sur-

round it with doctrines which partially and unequally obstruct its operation. Specific intent in the context of the section would cause such embarrassment without countervailing justification. Petitioners' allegations that respondents in fact did the acts which constituted violations of constitutional rights are sufficient.

365 U.S. at 207–08, 81 S.Ct. at 494–95.

es the constitutional requirements for procedural due process in the context of deprivations of liberty. This holding is unsupported by any reasoning that addresses the essential distinctions between property interests and liberty interests. The majority's holding on the substantive due process question engrafts an unprecedented state of mind element onto certain § 1983 actions. The rule that only intentional conduct violates substantive due process appears to result from undue yearning to establish a simple, bright-line rule. Instead, an evaluation of all the circumstances surrounding the alleged deprivation is necessary.

The essential characteristic of an action under § 1983 is an abuse of authority under color of state law that violates an individual's constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961); *Rhodes v. Robinson*, 612 F.2d 766, 772 (3d Cir.1979). A review of the facts reveals Thomas Beebe's abuse of his authority as an officer of the Michigan State Police. On February 23, 1975, Beebe stopped and then arrested Larry Wilson on suspicion of burglary. The trial court subsequently made findings of fact that Wilson "completely" submitted to Beebe, "precisely" followed all orders, neither resisted arrest nor attempted to escape and, in sum, "exercised reasonable care at all times" during the arrest. Despite Wilson's obvious submission and although a frisk had uncovered no weapons in Wilson's possession, Beebe attempted to handcuff Wilson while his service revolver was cocked. Knowledge can be imputed to Beebe, a veteran officer, that cocking the hammer of his revolver reduced the trigger-force necessary to fire the gun from between 10 and 15 pounds to a mere 3½ pounds of pressure. Nevertheless, as Beebe and Wilson stood together on an icy road, Beebe continued to hold the cocked revolver while using both hands to handcuff Wilson. As the tangle of four hands came together with the revolver, it discharged, resulting in grievous and permanent injury to Wilson.

Wilson alleged that Beebe's conduct, combined with the resulting injuries, amounts to a deprivation of liberty without procedural due process in violation of the Fourteenth Amendment. Proper evaluation of Wilson's claims involves a dual analysis. We must first determine whether protected interests in life, liberty, or property are implicated. If so, we must determine what procedures constitute due process of law. If satisfactory procedures are provided, then no constitutional deprivation has occurred despite the injury. *See Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). There can be little doubt that Wilson's injuries implicate his protected liberty interests in personal dignity and bodily integrity. *See Ingraham*, 430 U.S. at 673–74, 97 S.Ct. at 1413–14. The more difficult question requires determination of what procedural safeguards are required under the Fourteenth Amendment when a state constrains an individual's liberty: at what point has a Constitutional deprivation occurred? The difficulty in the present case arises because Supreme Court discussions of procedural due process address requirements for notice and a hearing before a "deprivation of life, liberty or property *by adjudication*" will be found to be constitutional. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (emphasis added). *See also Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (stating that a vital consideration is "the risk of an erroneous deprivation through the procedures used"). Beebe invaded Wilson's liberty interests in violation of established procedures that bar arrests accomplished with a cocked revolver.

Judge Keith, in his dissent, has articulated one response to this difficulty; the present case does not implicate questions of procedural due process because Beebe's conduct included actions which the Constitution will not countenance "no matter what procedural protections accompany them." *Hudson v. Palmer*, — U.S. —, 104 S.Ct. 3194, 3208 n. 4, 82 L.Ed.2d 393 (1984) (Stevens, J., concurring in part). Under this view, the present case would

involve only substantive due process questions. *Parratt v. Taylor,* which certainly is limited to issues of procedural due process, would not apply. There is much appeal in Judge Keith's view, in which I concur. Except for the existence of *Parratt v. Taylor* I would go further and consider whether procedural due process is concerned solely with deprivations that occur in accordance with established procedures. Perhaps negligent or abusive conduct under color of state law but in violation of established procedures should be analyzed exclusively under the rubric of substantive due process. In *Parratt,* however, the Supreme Court relied upon a procedural due process analysis to evaluate random conduct in violation of established procedures which deprived the plaintiff of property. Therefore, I accept that it is reasonable for this Court to evaluate Beebe's conduct through a procedural due process analysis. Traditional principles of procedural due process, however, do not support the majority's extension of *Parratt* beyond property deprivations to govern liberty deprivations such as those imposed upon Wilson by Beebe.

The general principle is thoroughly established that when interests protected by procedural due process are implicated, "some kind of hearing is required at some time before a person is *finally deprived*" of those interests. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (emphasis added). *See also Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). The established exception to this rule, however, is that in a property case, post-seizure process will satisfy constitutional standards in "extraordinary situations when some vital governmental interest is at stake." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Such "vital governmental interests" have involved state actions which are authorized by law and taken in the public interest. *See e.g., Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S.

594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (destruction of drugs); *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (seizing property from arguably incompetent bank management); *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (issuance of rent control regulations). Additionally, this exception traditionally has been expressly limited to deprivations of property. *See Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974) (quoting *Phillips v. Commissioner,* 283 U.S. 589, 596–97, 51 S.Ct. 608, 611–12, 75 L.Ed. 1289 (1931)).

In *Parratt v. Taylor,* the Supreme Court expanded upon this exception by holding that when a person is dispossessed of property by a "random and unauthorized act," so that a "preseizure hearing" is impractical, no constitutional deprivation has occurred if the state provides a postseizure remedy "at a meaningful time and in a meaningful manner." *See Parratt,* 451 U.S. at 539–41, 101 S.Ct. at 1914–16. It is not the responsibility of an intermediate court to. challenge the wisdom of applying an exception developed to promote vital governmental interests to cases such as *Parratt* which involve lawless conduct in violation of established state procedures. There are two aspects of the *Parratt* opinion, however, that require emphasis. First, in *Parratt* Justice Rehnquist acknowledges that procedural due process requires a hearing "before a State *finally* deprives a person" of his protected interests. *Parratt,* 451 U.S. at 540, 101 S.Ct. at 1915 (emphasis added). Second, *Parratt* does not direct plaintiffs to litigate constitutional violations in state courts; it holds that if a remedy is provided at a meaningful time and in a meaningful manner following seizure of the property, then no constitutional deprivation of property has occurred. *See Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916.

In extending *Parratt* to govern alleged deprivations of liberty without procedural due process, the majority maintains, without analysis, that the underlying rationale of *Parratt* applies equally in property and

liberty contexts. *See supra* at 11. Practicality for the government becomes the measure of procedural due process; if a prior hearing is impractical because an action violates state procedures, then a person acting under color of state law may intrude upon both property and liberty interests (and implicitly upon a person's interest in life itself), without violating the Constitution, as long as the state subsequently provides a remedy. But *Parratt* represents neither the first nor the last word by the Supreme Court on the requirements of procedural due process. The majority fails to consider the established principle that an evaluation of whether a procedural due process violation has occurred must first weigh the nature of "the private interest that will be affected by the official action." *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903. *See also Goss v. Lopez,* 419 U.S. at 579, 95 S.Ct. at 738. Procedural due process analysis, even in the context of negligent or abusive conduct under color of state law, begins by considering the nature of the right infringed upon. A Court then determines whether the availability of a state damage remedy prevents an intrusion from rising to the level of a constitutional deprivation. Under this analysis, the distinctions between property and liberty become controlling.

By its nature, property is commensurate with money, with few exceptions. Generally, money damages can actually and fully compensate for a loss of property. Therefore, the acts which dispossess a person of tangible property, or which effect a person's discharge from employment in which he has a property interest, do not in themselves necessarily amount to a constitutional deprivation. No fiction is necessary to conclude, as *Parratt* did, that postseizure damages satisfy procedural due process by returning the plaintiff to the position he would otherwise have occupied, thereby preventing a constitutional deprivation from occurring. The logical limit of *Parratt* is that no procedural due process deprivation occurs until a person has been dispossessed of property under color of state law and the state has failed to provide for subsequent proceedings at a meaningful time and in a meaningful manner.

When one begins by considering the nature of the liberty interests infringed upon in the present case, it becomes clear that *Parratt* does not control our deliberations because here the constitutional deprivation occurred simultaneously with the challenged conduct; subsequent proceedings cannot prevent the constitutional violation. Wilson's bodily integrity was permanently, irreparably violated at the moment he was shot. The consequences of that moment shape Wilson's future in a manner that no proceeding can alter. The shooting equally violated Wilson's intangible interest in personal dignity, in a manner that parallels the Monroe family's injury when they were forced to stand naked in their living room at gunpoint. *See Monroe,* 365 U.S. at 169, 81 S.Ct. at 474. These interests are not commensurate with money. It is at best a fiction to maintain that even the large damage award in this case fully compensates Wilson in a manner that precludes a procedural due process violation from arising. *Parratt's* consideration of subsequent state procedures is inapplicable because such procedures cannot fully compensate the victim. A constitutional violation occurred at the moment Beebe shot Wilson and the remedy for constitutional deprivations lies in federal court.

Five members of the Supreme Court have acknowledged the essential distinctions between property deprivations and liberty deprivations. Justice Blackmun concurred separately in *Parratt,* joined by Justice White, to emphasize the "narrow reach" of the holding. "I do not read the Court's opinion as applicable to a case concerning deprivation of life or of liberty." *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1917. Justice White, dissenting in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), and joined by Justices Brennan, Marshall, and Stevens, reasoned as follows:

> The infliction of physical pain is final and irreparable; it cannot be undone in a subsequent proceeding.

. . . .

The majority's conclusion that a damages remedy for excessive corporal punishment affords adequate process rests on the novel theory that the State may punish an individual without giving him any opportunity to present his side of the story, as long as he can later recover damages from a state official if he is innocent. The logic of this theory would permit a State that punished speeding with a one-day jail sentence to make a driver serve his sentence first without a trial and then sue to recover damages for wrongful imprisonment.

*Ingraham*, 430 U.S. at 695–96, 97 S.Ct. at 1425 (White, J., dissenting). Justice Stevens dissented separately, in part to highlight the distinction between property and liberty.

When only an invasion of a property interest is involved, there is a greater likelihood that a damages award will make a person completely whole than when an invasion of the individual's interest in freedom from bodily restraint and punishment has occurred. In the property context, therefore, frequently a postdeprivation state remedy may be all the process that the Fourteenth Amendment requires.

*Ingraham*, 430 U.S. at 701, 97 S.Ct. at 1427 (Stevens, J., dissenting).

The consequences of an analysis that weighs the characteristics of the liberty interests that allegedly have been invaded are readily apparent. In the present case the constitutional violation was complete at the time the injury was inflicted. *Parratt's* consideration of subsequent state proceedings is displaced. Damages are provided as a remedy for the constitutional deprivation, as partial recompense for an injury that never should have occurred, and in recognition that abusive exercise of governmental authority has no place in our system of ordered liberties.

A practically-minded person might object that this analysis amounts to formalistic word-play. Section 1983 plaintiffs seek money damages in compensation for inju-ries. If the states provide meaningful opportunities to recover damages, the plaintiffs will be satisfied and so should the Constitution. I reject such a reductionist view of the purpose of § 1983, and commend to the Court's consideration the concurrence of Justice Harlan in *Monroe*. *See* 365 U.S. at 194–198, 81 S.Ct. at 487–489. In considering whether the rogue officers in that case violated the plaintiffs' constitutional rights, Justice Harlan found no compelling evidence that Congress concluded that a "state remedy was more adequate for unauthorized actions than for authorized ones." *Monroe*, 365 U.S. at 194, 81 S.Ct. at 487 (Harlan, J., concurring).

The statute becomes more than a jurisdictional provision only if one attributes to the enacting legislature the view that a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.

*Monroe*, 365 U.S. at 196, 81 S.Ct. at 488 (Harlan, J., concurring). I agree with Justice Harlan and conclude that more than a question of money is at stake in the present controversy. The acts that deprived Wilson of liberty violated procedural due process and, therefore, are properly designated constitutional violations and are properly remedied in federal court.

I dissent from the majority opinion on a second ground. The majority imposes a state of mind requirement in actions which allege substantive due process violations. I agree with the majority that Wilson's substantive liberty interests were implicated by Beebe's conduct, although no express provision of the Bill of Rights was violated. Two cases, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), provide excellent guidance concerning the elusive meaning of substantive due process. Yet, I also concur in Judge Keith's conclusion that neither

precedent nor reasoning supports, much less compels, the majority's holding that only intentional conduct violates the penumbral guarantee of substantive due process. I write separately to offer my understanding of the analysis by which to identify substantive due process violations.

As the majority accepts, Judge Friendly's opinion in *Johnson v. Glick* articulates sound reasoning by which to determine whether conduct under color of state law "shocks the conscience."

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson*, 481 F.2d at 1033. Unlike the majority, I do not read this language to support a simple, bright-line rule that only intentional conduct violates substantive due process. It is anomalous to state that an individual has a substantive right to maintain his or her bodily integrity and then to examine only the state of mind of the person acting under color of state law to determine whether the victim's right has been violated.

I would begin by identifying the application of force under color of state law that allegedly infringed upon substantive rights. In the present case, Officer Beebe shot Wilson at close range with his service revolver. Second, we should consider the need for the application of force. There was no need for Beebe to apply force of this sort to restrain Wilson, who was passively submitting to arrest. Third, the application of force, therefore, was completely out of proportion with the need for force. Fourth, the consequence of this conduct was grievous and permanent injury to Wilson. Finally, although Beebe did not maliciously or intentionally injure Wilson, he recklessly and with disregard for established policy cocked his revolver and failed to uncock the gun once Wilson had submitted and had been frisked. This recklessness proximately caused Wilson's injury. There was no need to restrain Wilson with force, but extreme force was used, and Wilson was grievously injured; therefore, Beebe violated Wilson's substantive due process right to bodily integrity.

I believe that Wilson established both procedural and substantive due process violations of his vital interest in enjoying liberty without arbitrary governmental restraint and, therefore, I dissent from sections IV and V of the majority opinion.

WELLFORD, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's resolution of this most difficult case, to the extent that it holds Wilson possessed no federal cause of action. I cannot agree, however, with the majority's conclusion that Officer Beebe is not protected by official immunity under Michigan law. For this reason, I respectfully dissent.

In *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984), the court delineated the elements requisite to official immunity in Michigan. As a lower level official, Beebe was entitled to immunity if he was acting within the scope of his authority, in good faith, and was performing a discretionary, as opposed to ministerial, act. There is every indication that Beebe was acting in good faith while performing his duties.[1] The only issue appears to be whether he was performing a discretionary act.

Contrary to the position taken by the majority, I am convinced that Beebe was performing a discretionary function in effectuating the arrest. The discretionary nature of the arrest did not cease when Beebe attempted to handcuff Wilson with

---

1. Of course, to the extent the good faith and scope of authority issues present factual questions, they need to be addressed initially by the district court. Because *Ross* was handed down after this appeal, the court below never had occasion to make these specific findings.

pistol in hand; rather, the handcuffing was part and parcel to his activity requiring split second decisionmaking. Despite the majority's view, it is difficult to separate this decision made by Beebe from its effectuation, which also involved a decision as to manner of execution. For the *Ross* opinion to have any effect, recognition must be given to this fact. If it were otherwise, then every action taken by a police officer in respect to effectuating custody of a suspect, as opposed to failure to act, could be deemed ministerial. I cannot believe this was the intent of the Michigan Supreme Court in *Ross*. I would hold this action of defendant Beebe, taken in the course of his employment, and deemed negligent by the trier of fact,[2] was not a ministerial act, but rather a discretionary one, and that immunity under Michigan law attaches.

Specific language found in *Ross*, 420 Mich. 567, 363 N.W.2d at 668, 679–80, illustrates that Beebe's action was "discretionary-decisional:"

> An individual who decides whether to engage in a particular activity and *how best to carry it out* engages in discretionary activity [which] ... involves significant decision making.
>
> . . . . .
>
> The ultimate goal is to afford the officer ... enough freedom to decide the best method of carrying out his or her duties, while ensuring that the goal is realized in a conscientious manner.
>
> * * * * * *
>
> Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, *e.g.*, make an immediate arrest, pursue a suspect, issue a warning, await backup

assistance, etc., is a discretionary-decisional act entitled to immunity. Once that decision has been made, however, the execution thereof must be performed in a proper manner,. . . .

(Emphasis added).

In the alternative, rather than decide the state "discretionary-ministerial" issue at the appellate level, I would remand this matter to the trial court for its resolution in light of *Ross*.

---

2. I have difficulty in the concept that cocking one's revolver during the arrest and handcuffing, alone, of a felony suspect on a dark rural road is an act of negligence. Even if it is so deemed, I would find Officer Beebe's "decisional act" of cocking his weapon to be discretionary under all the circumstances.