Gary O'KELLY, Plaintiff,

v.

RUSSELL TOWNSHIP BOARD OF TRUSTEES and Rand D. Barnes, Defendants.

No. C87–926.

United States District Court, N.D. Ohio, E.D.

Dec. 16, 1987.

John F. Norton, Cleveland, Ohio, for plaintiff.

Anthony J. Hartman, Timothy P. McCormick, Hermann, Cahn & Schneider, Cleveland, Ohio, for defendants.

## ORDER

BELL, District Judge.

Plaintiff Gary O'Kelly filed this civil rights action against the Russell Township Board of Trustees (Russell Township) and Rand D. Barnes, a police officer appointed by Russell Township, claiming violations of his constitutional rights protected by the fourth, fifth and fourteenth amendments. Federal jurisdiction is based on 42 U.S.C. § 1983, 28 U.S.C. § 1343, and this court's pendent jurisdiction is invoked for plaintiff's state claim of false arrest and malicious prosecution.

Currently pending before the court are two motions: plaintiff's amended motion for partial summary judgment and defendants' motion for dismissal or, in the alternative, for summary judgment. The parties have responded to both motions.

Plaintiff's motion seeks entry of summary judgment as to the liability of Rand D. Barnes on the theory of collateral estoppel. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that as a matter of law, it is entitled to summary judgment. In reviewing a motion for summary judgment, a court must consider the pleadings, related documents and evidence and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Board of Ed. Cincinnati v. Department of H.F.W.*, 532 F.2d 1070 (6th Cir.1976). The inquiry performed at this stage is whether a trial is required to resolve genuine factual issues. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (citations omitted).

Plaintiff was arrested by defendant Barnes for driving while intoxicated on April 26, 1986. He refused to take a chemical breath test to determine his blood alcohol level. Such refusal resulted in the suspension of plaintiff's drivers license pursuant to Ohio Revised Code § 4511.191. The charges against plaintiff were dismissed on July 24, 1986. He then began proceedings to have his drivers license reinstated. In a suit captioned *Gary P. O'Kelly v. Michael J. McCullion* (Registrar of the Bureau of Motor Vehicles), judgment was entered in plaintiff's favor based on a finding that the arresting officer did not have probable cause to believe plaintiff was operating a motor vehicle. *See* Judgment Entry attached to plaintiff's motion. Officer Barnes testified as a witness at the evidentiary hearing held in that proceeding.

■ Plaintiff's contention in this motion is that to establish a violation of his fourth and fourteenth amendment rights in this case as to Officer Barnes, he must show that he was arrested without probable cause. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir.1978). Because that issue has been litigated in a state court of competent jurisdiction, plaintiff alleges that the doctrine of collateral estoppel should be applied in respect to the liability of defendant Barnes. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

Defendant responds that collateral estoppel is inapplicable in this case for two reasons: first, because there is no mutuality of parties between the two actions; and, second, because defendant did not have a fair and full opportunity to litigate the issue of probable cause in the first proceeding. The court finds that defendants' arguments are meritorious and that plaintiff's motion for partial summary judgment must be denied for the following reasons.

■ Clearly the doctrine of collateral estoppel can be invoked against a party in a section 1983 case to bar relitigation of a fourth amendment claim. *Allen v. McCurry*, 449 U.S. 90, 103–04, 101 S.Ct. 411, 419–20, 66 L.Ed.2d 308 (1980). In fact, federal courts are generally required to give preclusive effect to state court judgments whenever the state court would do so. 28 U.S.C. § 1738; *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983). However, a state court judgment will not be given preclusive effect in a federal action where the party against whom an earlier judgment is asserted did not have a full and fair opportunity to litigate the issue decided by the first court. *Id.; Allen v. McCurry*, 449 U.S. at 101, 101 S.Ct. at 418; *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

Applying these guidelines first requires an examination of the doctrine of collateral estoppel as applied by the State of Ohio.

The cases cited by defendant deal with the defensive use of collateral estoppel and require a mutuality of issues a parties before a prior judgment will preclude further litigation of an issue. *Jones v. VIP Development*, 15 Ohio St.3d 90, 99–100, 472 N.E.2d 1046 (1984); *State v. Tyack*, 13 Ohio St.3d 4, 5, 469 N.E.2d 844 (1984); *Beatrice Foods Co. v. Lindley*, 70 Ohio St.2d 29, 35, 434 N.E.2d 727 (1982). Whether there is a distinction when the doctrine is asserted offensively is not clear from these cases. The logic, however, would appear to apply in both situations.

In this first case, plaintiff was proceeding against the Registrar of the Bureau of Motor Vehicles for the return of his drivers license which had been revoked because of his refusal to submit to a breathalyzer test after he was arrested for driving while intoxicated. The issue was whether there was probable cause to believe plaintiff was operating a motor vehicle while intoxicated. Defendant Barnes testified as a witness but was not a party and was not represented by counsel. The only way one could find a mutuality of parties in the first case with the section 1983 case before this court is to determine that defendant Barnes' interests were so closely aligned with the Registrar that there could be deemed an identity of interests. *Wilson v. Attaway*, 757 F.2d 1227, 1237 (11th Cir.1985). That determination cannot be made, however. The Registrar's interest was focused upon whether or not to return plaintiff's driving privileges, a concern completely outside the interests of defendant Barnes. Thus, even if there were a mutuality of issue between the two proceedings, there was no mutuality of parties.

The primary reason why collateral estoppel cannot bar the litigation in this proceeding, however, is that defendant Barnes did not have a full and fair opportunity to litigate the issue in the first proceeding. He was merely a witness, was not represented by counsel and had no interest in the outcome. In this proceeding, he is exposed to personal liability and damages on a constitutional claim and a pendent state claim. The outcome in the first proceeding cannot, therefore, be held to bind him here.

*See Williams v. Kobel*, 789 F.2d 463, 470 (7th Cir.1986).

Accordingly, plaintiff's motion for partial summary judgment is denied.

Defendants are also before the court on a motion for dismissal, or in the alternative, for summary judgment. When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of a complaint. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983), *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1065 (6th Cir. 1984). To dismiss the complaint against defendant, the court would have to find it beyond doubt that the plaintiff can prove no set of facts in support of its claim which would justify the relief sought. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Defendants allege that plaintiff either has failed to state a claim upon which relief may be granted or that no material issue of fact exists as to certain claims of liability. In conjunction with this motion, defendants have submitted plaintiff's deposition testimony; the affidavit of defendant Barnes; and the testimony taken in the plaintiff's action against the Registrar, Bureau of Motor Vehicles, to recover his drivers license. The facts established by this record follow.

Ann and Clayton Bradley entertained plaintiff Gary O'Kelly and his wife, Sharon, at their home in Bedford Heights, Ohio, on the evening of April 25, 1986. Defendants' Motion Exhibit C, Testimony of Ann Bradley. They left at approximately 1:00 A.M. or 1:30 A.M. on the morning of April 26, 1987. *Id.* Plaintiff had consumed some alcohol at the Bradley home, and Sharon O'Kelly was driving when they left for home. *Id.;* Testimony of Ann Bradley and Sharon O'Kelly. Both plaintiff and Sharon O'Kelly entered the car through the drivers side at the Bradley's. *Id.* Cross-examina-

tion of Ann Bradley. Sharon O'Kelly drove the entire distance to their home and into their driveway before parking in back of their house. *Id.* Testimony of Sharon O'Kelly. The area where she parked is not visible from the street. *Id.*

As soon as the O'Kelly's arrived home, Sharon quickly ran into the house to use the bathroom. *Id.* She observed no other vehicle in their driveway before she went into the house or at any later time. *Id.* When her husband had not come into the house after approximately one-half hour, Sharon went looking for him. *Id.* She could not find him and did not know where he was until approximately 4:00 A.M. when she received a phone call from her husband. *Id. See, also,* Plaintiff's Deposition at 84.

When Sharon pulled into the driveway and went into the house, Gary O'Kelly got out of the car on the drivers side because the passenger door was broken. *Id.,* Cross-examination of Sharon O'Kelly; Cross-examination of Gary O'Kelly. After plaintiff got out of the car and as he approached the garage, he testified that a car pulled into the driveway. *Id.,* Testimony of Gary O'Kelly. Police Officer Barnes got out of the car, approached plaintiff and said that he had observed the car going left of center. *Id.* He asked to see plaintiff's drivers license. *Id.* Plaintiff reached into the car for his license but told the officer that he had not been driving. *Id.* Plaintiff also admitted having a few drinks in response to the officers inquiry. *Id.* The officer then put handcuffs on plaintiff to take him in for a sobriety test and would not let him go into the house to tell his wife he was leaving. *Id. See, also,* Plaintiff's Deposition at 71. Plaintiff was taken to the Chagrin Falls Police Station where he refused to take a breathalyzer test because he had not been driving. *Id.,* Plaintiff's Deposition at 72, 76, 81.

Officer Barnes testified that he observed the O'Kelly vehicle going left of center on Fairmount Road, he turned his vehicle around and followed the car as it proceeded east. *Id.,* Testimony of Officer Rand D. Barnes. He did not observe who was driving the vehicle until it pulled into the driveway. *Id.* He then saw plaintiff driving. *Id.* He pulled into the driveway behind and saw plaintiff get out of the vehicle on the drivers side. *Id.* He did not see Sharon O'Kelly exit the vehicle. *Id.* Upon observing plaintiff stumble out of the car, noticing an odor of alcohol and his slurred speech, Officer Barnes asked for his drivers licsense and asked him to perform some physical sobriety tests. *Id.* Plaintiff refused and started going into the house whereupon Officer Barnes arrested him for driving while intoxicated. *Id.* Officer Barnes saw no other person in the area during this time although plaintiff told him his wife was in the house. *Id.*

Once he transported plaintiff to the police station, Officer Barnes asked him to take a breathalyzer test and told him that refusal would result in the loss of his license pursuant to Ohio law. *Id.* Plaintiff refused to take the test because he said he had not been driving. *Id.* Plaintiff then called his wife and Officer Barnes drove him home. Plaintiff's Deposition at 84–85.

Plaintiff's counsel filed a motion to suppress and/or dismiss the charges based on lack of probable cause to believe that plaintiff had been operating the vehicle. Hearing was set for 11:00 A.M., on July 22, 1986, before Judge Robert Zulandt, Chardon Municipal Court. *See* Transcript attached to Defendant's Motion. A subpoena was issued for Officer Barnes to appear which was served at the Russell Township Police Department. Officer Barnes was not present at the time it was served and did not hear of the motion hearing until July 24, 1986, two days later. Affidavit of Rand D. Barnes at ¶4. He at all times intended to testify and would have but for an inadvertent error in communication by the prosecutor's office. *Id.* at ¶5. The prosecutor informed Judge Zulandt that he could not proceed without Officer Barnes whereupon the judge dismissed the case.

Plaintiff prevailed in a subsequent action against the Registrar, Bureau of Motor Vehicles, to recover his drivers license based on the court finding of no probable cause to believe plaintiff was driving. *See*

Plaintiff's Amended Motion for Partial Summary Judgment, Judgment Entry Attached. He filed this civil rights action on April 16, 1987, against both Officer Barnes and Russell Township.

Plaintiff's allegations against Russell Township are that it failed and neglected to train and supervise its police officers; that it condoned the unreasonable use of the power of arrest and prosecution by its officers and that it ratified Officer Barnes' conduct. *See* Complaint at ¶ 26–28. Plaintiff alleges further that these acts constitute a custom of Russell Township. *Id.* at 29. When asked at his deposition what facts he had to support this claim, he responded that he thought it was unprofessional for Officer Barnes not to let him speak to his wife before being taken to the station (Deposition at 96) and that the Chief would not give him a copy of the police report (Deposition at 97). In its response to interrogatories, Russell Township stated that there was only one officer on duty that night. Response to Defendants Motion, Exhibit B, question 19. When asked if Officer Barnes has ever been sanctioned by Russell Township, the response referenced only one incident in 1982 for which he was sanctioned. *Id.*, at question 35. Plaintiff knew of no specific facts underlying his claim against Russell Township when asked at his deposition. Plaintiff's Deposition at 97–99.

■ Defendants first submit that plaintiff has failed to state a claim upon which relief may be granted against Russell Township. This court agrees. It is well established that local governments can be liable under section 1983 for deprivations of federal rights but only if the deprivation was caused by an official municipal policy. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 236, 56 L.Ed.2d 611 (1978). Such liability may not be imposed on a *respondeat superior* basis merely because the municipality employs a person who violates constitutional rights. *Id.*

It is also now clear that municipal liability may be imposed for a single decision by its policymakers under certain circumstanc-

es. *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298–1299, 89 L.Ed.2d 452, 463 (1986). Although official policy is often defined by established, formalized plans of action, a municipality also makes decisions tailored to a particular situation and not intended to control later decisions. *Id.* If such a decision is properly made by a decisionmaker authorized to do so, a municipality is equally responsible for the action directed by that decisionmaker whether it was taken only once or expected to be repeated. *Id.* at 481, 106 S.Ct. at 1299, 89 L.Ed.2d at 464.

■ But every decision made by a municipal officer does not subject a municipality to section 1983 liability. *Id.* Section 1983 liability "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 481, 106 S.Ct. at 1299, 89 L.Ed.2d at 465.

Against this background, it is clear that plaintiff has not stated a claim against Russell Township. First of all, there is no policy, practice or custom of Russell Township asserted upon which to base section 1983. The only such policy even contained in plaintiff's brief was the practice of permitting only one officer to be on duty during the early morning hours of April 26, 1986. Plaintiff argues that Officer Barnes was the sole decisionmaker for Russell Township's policy department and his decision to arrest was thus the decision of Russell Township.

This argument is, at best, one of *respondeat superior* liability prohibited by *Monell*. Officer Barnes arrested plaintiff upon the authority vested in him by the township. Although he had the authority to make arrests within his duty functions, it cannot be said that he had the ability to establish final government policy, a requirement before imposing liability on a municipality. *Pembaur v. Cincinnati*, 475 U.S. at 483, 106 S.Ct. at 1300, 89 L.Ed.2d at 465. Nor is the decision whether to arrest an individual *per se* one of government

policy. It is made solely within the scope of employment under general policies defined by a municipality. Plaintiff has at most alleged that Officer Barnes made a mistake, not that the procedures set up to guide him were faulty. Even if this incident could be construed as misconduct by a nonpolicy-making employee, liability could not be imposed on the municipality absent a showing reckless or grossly negligent failure to train or supervise. *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 200 (6th Cir.1987). No such facts are shown.

Plaintiff then points to the fact that the case was dismissed against him, no appeal was instituted and no new charges filed. These things, he argues, are acknowledgments by the municipality that his arrest had been improper. Even if one could make this giant leap, there is still no official conduct or policy alleged to impose liability on the municipality.

Finally, plaintiff contends that because Officer Barnes was not sanctioned for his failure to appear at the suppression hearing, Russell Township condoned his conduct. The reason Officer Barnes did not attend was because he never received the subpoena. Failing to sanction him cannot automatically equate with condoning his conduct. In addition, under these circumstances, it is dubious whether his conduct can even be sanctionable.

In summary, there is no policy of Russell Township alleged to base liability upon in this case nor is there any connection drawn between plaintiff's injury and a municipal policy. Accordingly, Russell Township is dismissed from this lawsuit.

■ The second prong of defendants' motion is that the conduct at issue in this case does not rise to constitutional dimension so as to be actionable under section 1983. To establish a claim under section 1983, there are two jurisdictional prerequisites. First, plaintiff must have been deprived of rights, privileges or immunities secured by the Constitution and laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct.

1920, 64 L.Ed.2d 572 (1980); *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Second, it must be alleged that the defendants were acting under color of law when they committed these constitutional deprivations. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Clearly Officer Barnes was acting pursuant to state law at all times during the arrest of plaintiff. It is the substance of a constitutional deprivation that is here challenged.

Plaintiff alleges violations of his fourth, fifth and fourteenth amendment rights in his complaint first in regard to his arrest and then in relation to his property interest in his drivers license. The only claim he has in relation to his drivers license, however, is one of procedural due process. The applicable Ohio statute, O.R.C. § 4511.191(D), provides for automatic suspension of the drivers license of one arrested for driving while under the influence who refuses to take a breathalyzer test upon request. A due process procedure is also provided by the statute, O.R.C. § 4511.191(F), which may be invoked to review the administrative suspension. The scope of the hearing is limited by statute to the issues of whether the police officer had reasonable cause to believe the person was driving while under the influence, whether he was placed under arrest, whether he refused to submit to the test, whether he was informed of the consequences of refusal and whether his employment would be seriously affected by the suspension. The "implied-consent" statute has been ruled to be constitutional and the proceedings it outlines, civil and administrative in nature. *Hoban v. Rice*, 25 Ohio St.2d 111, 267 N.E. 2d 311 (1971). It is triggered by the sequence of arrest for driving while under the influence and refusal to take a chemical test offered under correct procedures and is completely independent of any criminal proceedings. *Id.*

Based upon this statute, Officer Barnes was required to advise the Registrar of the

Bureau of Motor Vehicles of plaintiff's refusal. His license was then administratively suspended. Upon his request, hearing was held and evidence taken resulting in the restoration of his license. Plaintiff thus invoked the due process procedures provided by the state statute.

Plaintiff has not made any allegations against the Registrar nor has he attacked the constitutionality of the implied consent statute. He alleges only that Officer Barnes deprived him of his property interest by initiating the administrative suspension. When a civil rights claim involves the deprivation of property, the first inquiry is whether the state provides an adequate remedy to satisfy fourteenth amendment due process requirements. *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981); *Vicory v. Walton,* 721 F.2d 1062, 1065–66 (6th Cir.1983). While some deprivations of property pursuant to established state procedures may require predeprivation hearings to comply with the mandate of due process, *see, e.g., Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982), the suspension of a drivers license for statutorily defined cause has been found constitutionally sufficient upon provision of a post-deprivation hearing. *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). Plaintiff was entitled to and, in fact, invoked an adequate post-deprivation process. He thus received all the process he is due under the fourteenth amendment.

Plaintiff also claims deprivation of his fourth and fifth amendment rights because of the suspension of his drivers license. Fourth amendment analysis is clearly inapplicable as no search was made in relation to the chemical test once plaintiff refused. The subsequent evidential use of a person's refusal to take a chemical test does have fifth amendment implications which have been considered and rejected by the Supreme Court. *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). At any rate, the facts as alleged do not support a fifth amendment claim.

In relation to plaintiff's arrest, defendant Barnes asserts that no constitutional deprivation has been stated or established and that there is no material issue of fact that he is entitled to qualified immunity based upon good faith. In his first claim, plaintiff alleges that Officer Barnes came onto his property, arrested him, handcuffed him and transported him to the police station without warrant or probable cause for arrest. Complaint at ¶ 6–9. Plaintiff claims that he was deprived of his liberty by this conduct in violation of his fourth, fifth and fourteenth amendment rights. There is no indication of how the fifth amendment applies to his arrest, however.

■ In relation to his fourth amendment claim, it is well established that this provision protects the right of people to be secure in their persons against unreasonable seizures. *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679–80, 83 L.Ed.2d 604 (1985). However, the defense of good faith and probable cause is available to Officer Barnes in this setting just as it is in the common-law action for false arrest and imprisonment. *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980); *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). The inquiry is based upon the objective standard of whether the facts available to the officer at the moment of seizure would warrant a person of reasonable caution to believe that the action taken was appropriate. *United States v. Hensley,* 469 U.S. at 233, 105 S.Ct. at 683, *quoting, Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968). More recently, in *Mitchell v. Forsyth,* the Court reaffirmed the existence of qualified immunity for the Attorney General, as the nation's chief law enforcement officer, "so long as his actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" 472 U.S. 511, 524 (1985), *quoting, Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See, also, Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Dom-*

*inque v. Telb,* 831 F.2d 673 (6th Cir.1987); *Kennedy v. City of Cleveland,* 797 F.2d 297 (6th Cir.1986).

Probable cause for arrest is considered on a factual standard based on the conduct of reasonable men and not legal technicians. 2 LaFave & Isreal, Criminal Procedure § 14.3(a) at 258 (1984). It is obviously less stringent than the standard required for conviction and even if no probable cause is found at a preliminary hearing, there still may have been probable cause for arrest. *Williams v. Kobel,* 789 F.2d 463, 468–69 (7th Cir.1986). Probable cause for arrest exists when the facts and circumstances known by an officer, based on reasonably trustworthy information, warrant a man of reasonable caution in the belief that an offense has been committed. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949).

█ The undisputed facts of this case must be examined in light of these principles. Officer Barnes observed plaintiff's vehicle going left of center, a fact plaintiff admits was possible due to the number of chuck holes in the road. Plaintiff's Deposition at 69. Sharon O'Kelly in fact testified that she "drove down practically the middle of the road" to avoid chuck holes. Transcript of Testimony before Judge Zulandt at 20. Upon turning and following the car into plaintiff's driveway, Officer Barnes saw only plaintiff in the vicinity of the car, smelled the odor of alcohol and noticed plaintiff's problems with balance. Officer Barnes arrested plaintiff based upon these observations. He was not rude or discourteous and did not abuse plaintiff in any way. Plaintiff's Deposition at 74. He told plaintiff he had observed the vehicle going left of center and that it appeared that he had had too much to drink. *Id.* at 76. Plaintiff also admits that he had had too much to drink to be driving. *Id.* at 81. It must be found on these undisputed facts that Officer Barnes was faced with fairly reliable information upon which a reasonably prudent person would conclude that there was probable cause for arrest. In addition, there is no indication that he acted

in anything but good faith. Even plaintiff admits that he knows of no reason why Officer Barnes would arrest him for no reason or maliciously and that he made a mistake or error in judgment. *Id.* at 103. Further, Officer Barnes believed at the time of the arrest and at the time of his affidavit that there was probable cause to arrest plaintiff for driving while under the influence of alcohol. Barnes Affidavit at ¶ 3.

The standards for reviewing a motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure have been outlined previously. In this court's view, there is no material issue of fact relating to plaintiff's fourth amendment claims. The court finds that Officer Barnes arrested plaintiff with probable cause and in good faith. Therefore, plaintiff's claim under the fourth amendment is dismissed.

█ The final area of inquiry is plaintiff's claim that the arrest violated is fourteenth amendment rights. It is unclear whether plaintiff is asserting a procedural or a substantive due process violation, either of which may underlie a section 1983 claim. *Wilson v. Beebe,* 770 F.2d 578, 583 (6th Cir.1985) *(en banc ).* It appears that plaintiff is alleging a deprivation of his liberty interest.

To establish a procedural due process claim, plaintiff would have to show first, that he was deprived of a protected interest through either the negligent or intentional conduct of the defendant, and, second, that this deprivation was without due process of law. *See Hudson v. Palmer,* 468 U.S. 517, 531–34, 104 S.Ct. 3194, 3202–04, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981). There are two approaches to the determination of whether due process has been afforded. *Bacon v. Patera,* 772 F.2d 259, 264 (6th Cir.1985); *Wilson v. Beebe,* 770 F.2d at 584–85. First, plaintiff could show that the defendant acted pursuant to an established state procedure. This conduct could be anticipated

and a predeprivation hearing could be afforded. The second manner in which a procedural due process may be shown is one based on conduct of defendant which is random and unauthorized. This conduct cannot be anticipated and thus a post-deprivation hearing would satisfy the requirements of due process. In either case, the focus is on whether the process provided by the state is adequate. *Wilson v. Beebe*, 770 F.2d at 578, 583, 584; *Johnson v. Pike*, 624 F.Supp. 390, 393–94 (N.D. Ohio 1985).

Plaintiff was provided the post-deprivation processes guaranteed by the constitution in any criminal case. Upon his motion and hearing, the charges against him were dismissed. Thus, no procedural due process violation is shown.

A substantive due process claim is equally unavailing in the evidence submitted in this case. A substantive due process claim may be established in one of two methods. First, plaintiff may show that a specific constitutional guarantee has been violated other than the due process clause of the fourteenth amendment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The court has previously analyzed all of the plaintiff's constitutional claims and found that none of them could be shown on these facts.

Second, if there is no specific constitutional violation on which to base substantive due process claim, plaintiff may still establish such a claim if he shows that the official act of which he complains "may not take place no matter what procedural protections accompany them." *Wilson v. Beebe*, 770 F.2d at 586 (*quoting Hudson v. Palmer*, 468 U.S. 517, 541 n. 4, 104 S.Ct. 3194, 3208 n. 4, 82 L.Ed.2d 393 (1984) (separate opinion of Stevens, J.)). The conduct complained of must be found to have been intentional and to "shock the conscience" as discussed in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). *See Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Wilson v. Beebe*, 770 F.2d at 586. The conduct alleged by plaintiff and established by the evidence is well within the area of policy authority and in no way approaches what could be deemed "shocking." Therefore, no due process violation, procedural or substantive, has been shown.

Accordingly, defendants' motion is granted. Exercise of jurisdiction over pendent claims is within the discretion of the trial court, *Roberts v. City of Troy*, 773 F.2d 720, 726 (6th Cir.1985). As the court has no independent jurisdiction over them, pendent claims may be dismissed if the federal claim is dismissed prior to trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 680 (6th Cir.1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977); *Nash & Associates, Inc. v. Lum's of Ohio, Inc.*, 484 F.2d 392, 396 (6th Cir. 1973). This case is thus dismissed in its entirety.

IT IS SO ORDERED.